ALBERT A. LAYTON, PLAINTIFF-APPELLANT, v. FREDERICK S. MOSELEY, JR., AND CHARLES ROBINSON, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1951—Decided October 15, 1951.

Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.

*Mr. Francis X. Kenneally* argued the cause for appellant (*Mr. Joseph P. Dunn,* attorney).

*Mr. James B. Emory* argued the cause for respondents (*Messrs. Markley & Broadhurst,* attorneys; *Mr. Edward A. Markley* and *Mr. Emory* on the brief).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. A. D.  Plaintiff's appeal is directed to the judgment of involuntary dismissal of his action entered at the close of his proofs upon the trial of the cause in the Law Division, Somerset County.

Plaintiff was a carpenter employed by North County Construction Company.  His employer contracted to replace a torn down roof on a small spring house on the farm of defend-

ant Moseley. The spring house had fieldstone walls about six feet high and 15 or more inches wide at the top. There was a fireplace centered at the interior east end with a chimney some 18 inches square extending two or three feet above the ridge pole of the peaked roof. The testimony is not clear whether the back of the chimney was flush with the inner side of the east wall or was separated therefrom by a space of a foot or more. It is clear, however, that the chimney did not encroach upon the top of the wall so as in any way to narrow the width of the top at that place.

On December 2, 1948, plaintiff and a fellow carpenter, Riley, were erecting wooden rafters from the tops of the side walls to the ridge pole. They had laid planks between the north and south walls to form a work platform. Plaintiff was nailing the rafters to the ridge pole, which reached to his waist as he stood on the platform, and Riley was nailing the rafters to the wood plates on the tops of the walls. They started from the west end of the building, nailing two rafters at a time on each side of the ridge.

Riley and the plaintiff completed the erection of all but the pair of rafters to go at the extreme east end when the mishap from which this suit eventuated occurred. Plaintiff has no recollection of what happened because he "blacked out." Riley testified that plaintiff started to walk along the top of the east wall of the building to cross from the south to the north side. Riley saw him falling from the wall with his arms around the chimney which came down with him and buried him under a pile of bricks as he lay on the ground.

Plaintiff sought to sustain defendant Moseley's liability upon the premise that the duty of due care owing plaintiff as an invitee embraced the duty to keep the chimney in good repair so as not to cause him injury.

All that appears is that, with his arms around the chimney, plaintiff and the chimney fell together outside the wall, the chimney coming across it. Plaintiff may have lost his footing and have seized the chimney to save himself. But if we make the assumption most favorable to him, that the

back of the chimney was flush with the inner side of the wall and that he grasped the chimney to aid his passage while crossing the top of the wall to continue the job, no invitation to use the chimney in that fashion can be inferred from the facts. *Cf. Corrao v. West Jersey Corp.*, 13 *N. J. Super.* 342 (*App. Div.* 1951). The top of the wall was at least 15 inches wide along its entire length, and it was not made to appear how or why the use of the chimney was necessary to accomplish plaintiff's purpose. Upon the facts shown we see no room for any inference except that when plaintiff made use of the chimney in crossing, if he did, he went beyond the limit of any invitation he may have had to use the top of the wall as a passageway. *The New York and New Jersey Telephone Company v. Speicher,* 59 *N. J. L.* 23 (*Sup. Ct.* 1896), affirmed 60 *N. J. L.* 242 (*E. & A.* 1897). Too, a chimney has a well understood and limited function, and is not normally designed with any such use in mind as that which plaintiff may have made of it, which fact, when considered with the facts that the top of the wall was but six feet above the ground and provided a ledge 15 or more inches wide, effectively removes any basis for an inference that plaintiff may have been led by any acts or conduct of Moseley to believe that the chimney was intended, adapted or allowed to be used in that manner. *Cf. Corrao v. West Jersey Corp., supra*; and see *Saunders v. Eastern Hydraulic Brick Co.,* 63 *N. J. L.* 554 (*E. & A.* 1899); *Gavin v. O'Connor,* 99 *N. J. L.* 162 (*E. & A.* 1923); *Egan v. Krueger,* 103 *N. J. L.* 474 (*E. & A.* 1927); *Heuser v. Reilly,* 128 *N. J. L.* 533 (*Sup. Ct.* 1942), affirmed *Heuser v. Turteltaub,* 129 *N. J. L.* 388 (*E. & A.* 1943). It follows that Moseley is not liable for plaintiff's injury.

Since we conclude that the invitation did not extend to the use of the chimney by the plaintiff, we do not reach the question whether there was proof of lack of due care in the maintenance of the chimney. However, we observe in passing that the plaintiff's evidence did not even present a jury question on that issue. He attempted to prove affirmatively, through an expert witness, that the vibration of a one and

one-half horsepower one-cylinder engine placed in or on the concrete floor of the building some six feet from the fireplace and used to pump water to cattle, had caused a disintegration of the concrete in the chimney and weakened it. This effort failed because the expert readily admitted that the effect would first appear in the concrete flooring surrounding the motor and the testimony was that the flooring was in good condition and had been for over 30 years.

And the doctrine of *res ipsa loquitur*, also urged upon us by plaintiff, has no application to the circumstances of this occurrence, as the defendant was not under a duty to maintain the chimney for the use thereof made by the plaintiff.

Affirmed.